1 ROBERT W. FREEMAN
Nevada Bar No. 3062
2 Robert.Freeman@lewisbrisbois.com
LEWIS BRISBOIS BISGAARD & SMITH LLP
3 6385 S. Rainbow Boulevard, Suite 600
Las Vegas, Nevada 89118
4 702.893.3383
FAX: 702.893.3789
5 Attorneys for Defendants
Las Vegas Metropolitan Police Officers: Alyn
6 Beck, Garrett Escartin, Kelly Holloway, Antonio
Laurenco, Brian Rich, Harrison Porter, Richard
7 Thomas, CCDC Sergeant Jesse Reynolds

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA, SOUTHERN DIVISION**

\*\*\*

| | |
|---|---|
| MANUEL RAMOS RODRIGUEZ, | CASE NO. 2:15-cv-1212-GMN-NJK |
| Plaintiff, | |
| vs. | **ORDER** |
| LAS VEGAS METROPOLITAN POLICE DEPARTMENT, ET AL. BECK, ALYN – LVMPD #7459; ESCARTIN, GARRETT – LVMPD # 9496; HOLLOWAY, K – LVMPD #10146; LAURENCO, ANTONIO – LVMPD#5198; RICH, BRIAN - LVMPD #14300; PORTER, H – LVMPD # 14086; THOMAS, RICHARD – LVMPD P# 9658; LOMBARCO, JOE – LVMPD – SHERIFF; MCMAHILL, KEVIN – LVMPD- UNDER SHERIFF, REYNOLDS, LVMPD-CCDC-SERGEANT, BROWDER, TIMOTHY – IMC- HOSPITAL PHYSICIAN; DR. DURAN –CCDC NAPHCARE – PHYSICIAN; DR. ZINSER – CCDC – NAPHCARE – PHYSICIAN, JOHN DOE – CCDC CHIEF MEDICAL ADMINISTRATOR; | |
| Defendants. | |

Pending before the Court is the Motion for Summary Judgment, (ECF No. 46), filed by Defendants Las Vegas Metropolitan Police Department ("LVMPD"), Officers Alyn Beck ("Beck"), Garrett Escartin ("Escartin"), Kelly Holloway, Antonio Laurenco, Brian Rich ("Rich"),

Harrison Porter, Richard Thomas, and Corrections Sergeant Jesse Reynolds (collectively "Defendants'"). Plaintiff Manuel Ramos-Rodriguez ("Plaintiff") filed a Response, (ECF No. 54), and Defendants filed a Reply, (ECF No. 61).

Also pending before the Court is Plaintiff's Motion to Compel Discovery, (ECF No. 45).[1] Defendants did not file a response.

## I. BACKGROUND

This case arises out of an officer-involved shooting that occurred on March 3, 2014. (Second Am. Compl. at 3, ECF No. 19). That afternoon, Amalio Nevares ("Nevares") was waiting for someone to repair his sprinkler system when he saw Plaintiff rummaging through his van. (Det. Clifford Arrest Report at 1, Ex. A-1 to Decl. of Robert Freeman, ECF No. 47-1). Nevares yelled at Plaintiff to get out of his van at which point Plaintiff approached within six feet of Nevares and aimed a small-framed black revolver at him. (*Id*.). Plaintiff demanded the keys to Nevares's van and indicated that the police were after him. (*Id*.).

Nevares told Plaintiff he would get his keys that were inside the house and while inside told his wife to call the police. (*Id*.); (*see* Maria Nevares's Voluntary Statement, Ex. A-4 to Decl. of Robert Freeman, ECF No. 47-4). Once Nevares came back outside with the keys, Plaintiff was gone. (Det. Clifford Arrest Report at 1, ECF No. 47-1). Nevares's wife witnessed Plaintiff confront and point his revolver at her husband from inside her house and subsequently called the police. (*Id*.); (*see* Maria Nevares's Voluntary Statement at 13, Ex. A-4 to Decl. of Robert Freeman, ECF No. No. 47-4).

After leaving the Nevares residence, Plaintiff went to another individual's house – Carmen Lopez-Hernandez ("Carmen") – and confronted her and her son demanding keys to their car. (Det. Clifford Arrest Report at 2, ECF No. 47-1). Carmen refused to give Plaintiff her keys and Plaintiff left after asking several times, implying that the police were after him. (*Id*.).

---

[1] During the hearing held on November 2, 2018, the Court found that Plaintiff has not provided sufficient information identifying: (1) the necessary discovery Plaintiff is lacking, and (2) why new evidence could not be sought by the discovery deadline of May 14, 2018. Accordingly, Plaintiff's Motion to Compel Discovery, (ECF No. 45), is **DENIED**.

Officer Rich responded to the call from Ms. Nevares and decided to drive north of the area in search of Plaintiff. (*Id*.). When Rich arrived in the area of Vallejo Court, he witnessed Plaintiff peering through windows of houses and attempting to gain entry through the front doors. (*Id*.). Plaintiff did not see Rich approach, however once Rich announced his presence, Plaintiff displayed a revolver and aimed it in the direction of Rich. (*Id*.). Rich took cover behind his vehicle and drew his own weapon, but when he stood back up Plaintiff was running toward the back wall of another residence. (*Id*.). Rich ordered Plaintiff to, "Drop the gun!" (*Id.*). However, Plaintiff continued to flee eventually getting out of Rich's line of sight. (*Id*.). Rich transmitted what occurred and Plaintiff's location to other units in the area. (*Id*.)

Plaintiff continued down the alleyway and towards Charleston near the I-95. (*Id*.). Officer Rich circled around to the open end of the alleyway where Plaintiff would exit if he continued to walk and noticed that Plaintiff was still holding his revolver. (*Id*. at 3). Officer Rich also saw several other officers following closely behind Plaintiff giving Plaintiff orders. (*Id*.). Defendants claim that Plaintiff did not drop the weapon and instead began to raise the weapon and point it at Officers Rich and Beck. (*Id*.). Consequently, Officer Garrett Escartin fired his weapon and hit Plaintiff several times. (*Id*.). Plaintiff was quickly taken into custody and transported to UMC Trauma where life-saving efforts were successful. (*Id*.).

At the time Plaintiff confronted Nevares, he was already sought by LVMPD in connection with another incident. Earlier that day, patrol officers with LVMPD responded to a call from UMC Medical Center Emergency room, in reference to a male that was admitted with a gunshot wound to his face. (Officer Cook's Arrest Report at 1, Ex. A-2 to Decl. of Robert Freeman, ECF No. 47-2). The victim was later identified as Ariel Ortega ("Ortega"). (*Id*.). Due to the nature of his injuries the officers interviewed Ortega and the individuals who transported him to the hospital. (*Id*.). After several days of investigation, LVMPD concluded that Plaintiff had shot Ortega in the face. (*Id*. at 2–5).

On May 23, 2017, Plaintiff filed his Second Amended Complaint against Defendants LVMPD and several other officers alleging Fourth, Eighth, and Fourteenth Amendment violations as a result of the confrontation between LVMPD officers and Plaintiff near the I-95/Charleston

onramp. (Second Am. Compl., ECF No. 19); (Order, ECF No. 21).  Plaintiff alleges that he was shot several times by Officer Escartin after he surrendered to police, was severely injured, and required a colostomy procedure to save his life. (*Id.*).  After the discovery timeline concluded, Defendants timely moved this Court for Summary Judgment on June 12, 2018. (ECF No. 46).

On November 2, 2018, the Court held a hearing on the Motion for Summary Judgment and the Motion to Compel.  At the close of the hearing the Court stated it would enter the instant written order on the motions at issue.

## II.     LEGAL STANDARD

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.*  "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999)).  A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis.  "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.  In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).  In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving

party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv.*, *Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

## III. DISCUSSION

LMVPD moves for summary judgment pursuant to Fed. R. Civ. P. 56, as to all of Plaintiff's claims. Plaintiff's suit is brought pursuant to 42 U.S.C. § 1983 and includes both individual and official capacity claims against the individually named Defendant police officers ("Defendant Officers").

Section 1983 is not itself a source of substantive rights, but only a method for vindicating federal rights elsewhere conferred. *See Albright v. Oliver*, 510 U.S. 266, 271 (1994). Pursuant to

the statute, in order to prevail in a "Section 1983" case a plaintiff must prove two elements: (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived the plaintiff of rights, privileges or immunities secured by the Constitution or laws of the United States.

The doctrine of respondeat superior does not apply to claims brought pursuant to 42 U.S.C. § 1983. *See Shaw v. State of Cal. Dep't of Alcoholic Beverage Control*, 788 F.2d 600, 610 (9th Cir. 1986). In order to pursue a civil rights individual capacity action, the plaintiff must show that the official was personally involved in the alleged constitutional violation. *See Fayle v. Stapley*, 607 F. 2d 858, 862 (9th Cir. 1979) (dismissing Director of State Health Department in individual capacity because of lack of involvement); *see also Jones v. Williams*, 297 F. 3d 930, 934 (9th Cir. 2002) (holding that officers cannot be liable for an allegedly unlawful search when there is no direct evidence of their individual participation).

### A. Excessive Force Claim against Defendant Officers

The Fourth Amendment guarantees individuals the right to be free from the excessive use of force by law enforcement officers. *Graham v. Connor*, 490 U.S. 386, 388 (U.S. 1989). The inquiry in an excessive force case is whether the officer's conduct was objectively reasonable under the circumstances. *Smith v. City of Hemet*, 394 F.3d 689, 701 (9th Cir. 2005). Specifically, the reasonableness of the force used must be determined from the perspective of a reasonable law enforcement officer at the scene of the incident in question. *Graham*, 490 U.S. at 396.

The Court must balance the "nature and quality of the intrusion" on a person's liberty with the "countervailing governmental interests at stake" to determine whether the use of force was objectively reasonable under the circumstances. *Id*. In *Graham*, the Supreme Court indicated that relevant factors in the Fourth Amendment reasonableness inquiry include "[1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether he is actively resisting arrest or attempting to evade arrest by flight." *Id*. The Court did not, however, limit the inquiry to those factors. "Because the test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application," the reasonableness of a seizure must instead be assessed by carefully considering the objective facts

and circumstances that confronted the arresting officers. *Id*. In some cases, for example, the availability of alternative methods of capturing or subduing a suspect may be a factor to consider. *See Chew v. Gates*, 27 F.3d 1432, 1441 n.5 (9th Cir. 1994).

The reasonableness determination in a Fourth Amendment excessive force cause of action is generally reserved to the jury. *Paiva v. City of Reno*, 939 F. Supp. 1474, 1485 (D. Nev. 1996). The Court must view the evidence in the light most favorable to Plaintiff and cannot grant summary judgment if such evidence could support a finding of excessive force. *Smith*, 394 F.3d at 701. However, on a motion for summary judgment, a court may grant the motion when, in viewing the evidence in the light most favorable to the nonmoving party, the force used appears reasonable. *See id*. (citing *Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir. 1994)). Courts do not weigh evidence on summary judgment but examine the state of the evidence to determine whether there remain genuine issues of fact, material to resolving the issue. *Id*.

Here, Defendants argue that Plaintiff's Fourth Amendment excessive force claim against Defendant Officers must be dismissed because each of the three (3) *Graham* factors weigh in favor of the Defendant Officers. (Mot. for Summ. J. 8:22, ECF No. 46). Defendants argue that leading up to the encounter between Defendant Officers and Plaintiff, Plaintiff was in violation of NRS 200.380, Nevada's robbery statute.[2] (*Id.* 8:23–9:9)

Additionally, Defendants argue Plaintiff was in violation of NRS 200.471, Nevada's assault statute.[3] (*Id.*). Specifically, Defendants claim Plaintiff was armed with a revolver and

---

[2] The statute provides that:
Robbery is the unlawful taking of personal property from the person of another, or in the person's presence, against his or her will, by means of force or violence or fear of injury, immediate or future, to his or her person or property, or the person or property of a member of his or her family, or of anyone in his or her company at the time of the robbery. A taking is by means of force or fear if force or fear is used to: (a) Obtain or retain possession of the property; (b) Prevent or overcome resistance to the taking; or (c) facilitate escape.

[3] The statute provides that:
"Assault" means: (1) Unlawfully attempting to use physical force against another person; or (2) Intentionally placing another person in reasonable apprehension of immediate bodily harm.

(footnote continued)

aimed his weapon at and threatened several individuals in an effort to steal their vehicles in his attempt to flee the police. (*Id.* 9:10–9:24). Further, when Defendant Officers confronted Plaintiff, he refused to obey their orders to drop the revolver and even aimed it towards the officers before Officer Escartin opened fire. (*Id.*). In support of Defendants' contentions, they retained the services of Expert Witness Ken Katsaris.[4] Mr. Katsaris opined that Escartin's use of force was reasonable because Plaintiff was armed and ignored commands, continued to walk towards a busy intersection, waved his weapon in the air, and aimed his weapon at the surrounding officers. (*Id.* 10:7–20); (*see* Ken Katsaris Aff., Ex. A-8 to Decl. of Robert Freeman, ECF No. 47-8).

Plaintiff claims that Defendants cannot rely upon Defendant Officers' voluntary statements that support their contentions arguing that they contain several "contradictory" and "unreliable" statements. (Resp. at 6–7, ECF No. 54). In reply, Defendants point out that Plaintiff failed to adequately participate in discovery and thus Plaintiff relies solely on his unsupported allegations contained in his Complaint. (Mot. for Summ. J. 11:14–20). Additionally, Defendants highlight that several of Plaintiff's statements in his Complaint are contradicted by his own responses to LVMPD's discovery requests (e.g., Plaintiff omitted the fact that he was armed in his Complaint, Plaintiff denied that he was armed in a response to a Request for Admission, but admitted that he was in the process of throwing his firearm away in response to an Interrogatory request). (*Id.* 11:4–13); (*see* Pl.'s Answers to Interrogs. 5:1–2, Ex. A-10 to Decl. of Robert Freeman, ECF No. 47-10).

The evidence shows that Plaintiff held a gun up in the air, refused to comply with the officer's commands, lowered the gun, and moved forward towards Officer Beck. (Alyn Beck Grand Jury Testimony at 12, 17, Ex. A-8 to Resp., ECF No. 54); (s*ee* Officer Rich's Statement at 28, Ex. A-6, ECF No. 47-6) (stating that Plaintiff was fixated on Officer Rich and another officer while Plaintiff was raising his firearm); (*see also* Officer Escartin Grand Jury Testimony at 25, Ex.

---

[4] Mr. Katsaris is currently a certified Florida Law Enforcement Officer/Instructor, and consultant in law enforcement and corrections. He has over thirty years of experience and worked as an instructor at the Florida Highway Patrol Academy. (*See* Ken Katsaris Curriculum Vitae, Ex. A-7 to Decl. of Robert Freeman, ECF No. No. 47-7).

A-10 to Resp., ECF No. 54) ("As I drew down my firearm still giving the subject commands he began to, he had the firearm in his left hand, it was raised, he began to lower it a little bit towards officer Beck and the traffic at Charleston."). In response to Plaintiff's refusal to comply with the officers' commands, Escartin fired four shots at Plaintiff who sustained serious injuries. (Officer Escartin Grand Jury Test. at 25, Ex. A-10 to Resp., ECF No. 54); (*see* Arrest Report by Det. Mogg at 3, Ex. A-1, ECF No. 47-1) ("The male, who was facing south toward Officer Beck brought the gun down below his head and rocked the gun forwards toward Officer Beck at which time officer Escartin fired four shots in rapid succession until the suspect fell to the ground."). Notably, Plaintiff provides a statement from Lindsay Stone, an individual who was sitting in a car at a traffic light and observed the incident, which states that Plaintiff's "arms were up the entire time." (Lindsay Stone Witness Statement, Ex. A-14 to Resp., ECF No. 54). Lindsay Stone explains that Plaintiff never put the gun down and continued to move toward the officers. (*Id.*).

The testimony from the officers present during the shooting and eyewitness Lindsay Stone show that the arresting officers were confronted by an individual who attempted to evade arrest by flight, waived a gun in the air, pointed his gun at an officer, and refused to comply with the officers' commands. Furthermore, Plaintiff has not provided any evidence to refute Defendants' evidence other than to state that the testimony provided is self-serving. In light of the evidence presented, the Court finds that the force used appears reasonable under the circumstances. Furthermore, Plaintiff failed to meet his burden to show that there is an issue of material fact, and thus, summary judgment on Plaintiff's Fourth Amendment Excessive Force claim is appropriate.

**B.    Racial discrimination claim against LVMPD**

Defendants argue that Plaintiff failed to show any evidence of racial discrimination. (Mot. Summ. J. 12:12–15). "To state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir, 1998), *cert denied*, 525 U.S. 1154 (1999). Defendants contend that Plaintiff failed to produce, or otherwise discover, any evidence to support his claim of racial discrimination, and thus his Fourteenth Amendment claim

must fail. (Mot. Summ. J. 12:12–18). The Court agrees with Defendants. Plaintiff failed to present evidence or rebut Defendants' claims in his Response, (ECF No. 54), to the Motion for Summary Judgment. Accordingly, Plaintiff's claim for racial discrimination fails because he does not meet his burden of proof under Fed. R. Civ. P. 56.

### C. Eighth Amendment violation claim against LVMPD

Defendants again argue that Plaintiff failed to show any evidence of an Eighth Amendment violation as a result of the incident at issue. (Mot. Summ. J. 13:1–6). A state official inflicts cruel and unusual punishment by exhibiting deliberate indifference to a prisoner's serious medical needs. *Peralta v. Dillard*, 744 F.3d 1076, 1097 (9th Cir. 2014) (citing *Estelle v. Gamble*, 429 U.S. 97, 103–104 (1976)). Deliberate indifference, in turn requires subjective culpability, as the official must know of and disregard an excessive risk to inmate health. *Farmer v. Brennan*, 511 U.S. 825, 837–38 (1994). Here, Plaintiff does not rebut Defendants' claims in his Response to the Motion for Summary Judgment. Similar to Plaintiff's claim for racial discrimination, Plaintiff fails to produce any evidence to support his claim of deliberate indifference or cruel and unusual punishment, and thus his Eighth Amendment claim must fail. Accordingly, Plaintiff has not met his burden of proof, and the Court must grant summary judgment in favor of Defendants as to Plaintiff's Eighth Amendment violation claim.

### D. Qualified Immunity

LVMPD argues, in the alternative, that even should this Court determine that Plaintiff's Fourth and/or Eighth Amendment rights were violated as a result of the subject incident the Defendant Officers are, nevertheless, entitled to Qualified Immunity. (Mot. Summ. J. 13:8–15:13). To overcome a claim of qualified immunity, the plaintiff must allege facts showing that the official's conduct violated a constitutional right and must also demonstrate that the right violated was clearly established. *Inouye v. Kemna*, 504 F.3d 705, 712 (9th Cir. 2007). The plaintiff bears the burden of proof on both points. *Sorrels v. McKee*, 290 F.3d 965, 969 (9th Cir. 2002); *Cruz v. Kauai County*, 279 F.3d 1064, 1069 (9th Cir. 2002). For a right to be clearly established, its contours "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Saucier v. Katz*, 533 U.S. 194, 202 (2001) (quoting *Anderson v.*

*Creighton*, 483 U.S. 635, 640 (1987)).  In other words, the "right must be sufficiently clear 'that every reasonable official would [have understood] that what he is doing violates that right.'" *Reichle v. Howards*, 132 S. Ct. 2088, 2093, 182 L. Ed. 2d 985 (2012).

Here, as discussed, Plaintiff has failed to demonstrate a genuine issue of material fact as to the alleged Fourth, Eighth, and Fourteenth Amendment violations.[5]  Even if Plaintiff could establish an underlying constitutional violation however, Plaintiff has failed to meet its burden of pointing the Court to legal authority showing that the Defendants violated clearly established law.

**IV.    CONCLUSION**

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment, (ECF No. 46), is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Compel Discovery, (ECF No. 45), is **DENIED**.

The Clerk of the Court is directed to enter Judgment accordingly and close the case.

**DATED** this  13  day of December, 2018.

_____
Gloria M. Navarro, Chief Judge
United States District Court

---

[5] In light of this holding, Plaintiff is not entitled to punitive damages. (*See* Second Am. Compl. 31:18–20, 37:20–22, 41:21–23).